O

# United States District Court
# Central District of California

SUNNY MISUN KIM, et al.

          Plaintiffs,

   v.

SCOTTSDALE INSURANCE COMPANY, et al.,

          Defendants.

Case № 2:21-cv-02185-ODW (JPRx)
Consol.: 2:21-cv-09642-ODW (JPRx)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [29] [33]**

## I.      INTRODUCTION

Plaintiffs Sunny Misun Kim and LA 1 Realty, Inc. bring these consolidated insurance defense actions against Defendants Scottsdale Insurance Company, Scottsdale Indemnity Company, and Nationwide Mutual Insurance Company. Plaintiffs and Defendants each move for summary judgment or partial summary judgment as to Plaintiffs' causes of action and requested relief ("Motions"). (Pls. Mot. Summ. J. ("PMSJ"), ECF No. 29; Defs. Mot. Summ. J. ("DMSJ"), ECF No. 33.) The Motions are fully briefed. (Defs. Opp'n, ECF No. 37; Pls. Reply, ECF No. 39; Pls. Opp'n, ECF No. 38; Defs. Reply, ECF No. 40.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** both Motions.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

Sunny Misun Kim is a real estate broker and President and CEO of LA 1 Realty.  (Pls. Statement of Uncontroverted Facts ISO PMSJ ("PSUF") 4, ECF No. 30; Defs. Statement of Genuine Issues ("DSGI") & Additional Material Facts ("DAMF") 70, ECF No. 37-2.)[2]  On May 20, 2014, Scottsdale Insurance issued LA 1 a one-year Business and Management Indemnity Policy ("2014 Policy").  (Defs. Statement Uncontroverted Facts ISO DMSJ ("DSUF") 1, ECF No. 33-2; PSUF 18; Decl. Steven C. Shuman ISO PMSJ ("Shuman Decl. PMSJ") Ex. 6, ECF No. 29-3.) The following year, on May 20, 2015, Scottsdale Indemnity renewed the 2014 Policy for one year under the same terms ("2015 Policy").  (DSUF 2; PSUF 19; Shuman Decl. PMSJ Ex. 7, ECF No. 29-3.)   The 2014 and 2015 Policies (together, the "Policies") covered LA 1, and Kim as LA 1's officer, in the business of providing professional real estate services.  (*See* PSUF 21, 28; DSUF 4.)

The Policies obligate the insurer to defend any timely reported "Claim" of a "Wrongful Act" made against Kim or LA 1, "even if any of the allegations are groundless, false or fraudulent . . . ."  (PSUF 22, 25.)  Under the Policies, a "Claim" includes "a civil proceeding against any Insureds," and a "Wrongful Act" means "any actual or alleged error, omission, misleading statement, misstatement, neglect, . . . breach of duty or act allegedly committed . . . by the Insureds," in connection with their rendering of professional real estate services.  (PSUF 26–27.)   The Policies obligate the insurer to pay Kim's and LA 1's losses incurred by reason of a Claim for a Wrongful Act.  (PSUF 22.)  "Loss" includes "Costs, Charges, and Expenses incurred by the Insureds," including "reasonable and necessary legal" fees and expenses incurred in defending Claims.  (PSUF 23–24.)

The Policies exclude coverage under specific circumstances.  Relevant here, the "Real Estate Endorsement" excludes coverage for claims involving (a) the guarantee

---

[2] Where Plaintiffs' and Defendants' undisputed facts overlap or are duplicative, the Court has considered both even where the Court cites to only one.

of potential profitability ("Guarantee Exclusion"),[3] representations about warranties of future value ("Future Value Exclusion"),[4] and activity as a dual agent if undisclosed or unconsented ("Dual Agency Exclusion").[5]   (DAMF 65–67;  *see*  2015 Policy, Endorsement 4 ("Real Est. Endor.").)

### A.   The Yoon Action

In July 2014, Kim brokered Don and Eunice Yoon's purchase of a commercial property from Young Ja Choi.  (PSUF 1–4.)  Kim acted as the agent for the Yoons and Choi.  (PSUF 1, 4; DAMF 71.)  During escrow, LA 1 supplied information from Choi to the Yoons, including rent rolls regarding the property's tenancies; Kim transmitted some of those materials to the Yoons on LA 1 stationary with the disclaimer, "information deemed reliable but not guaranteed."  (PSUF 3, 7; DAMF 78.)   The Yoons later discovered that Choi had manipulated the rent rolls to improve the property's financial appearance.  (*See* PSUF 5, 6; DAMF 69, 74.)

On June 23, 2015, the Yoons sued Kim, LA 1, and others in state court ("Yoon Action").  (PSUF 8.)  The Yoons' claims against Kim and LA 1 included fraud, breach of fiduciary duty, and professional negligence.  (PSUF 9; DAMF 73, 74, 76.)  The Yoons alleged that Kim and LA 1 misrepresented, failed to disclose, or omitted material facts regarding the income value of the property; knew or should have known that the rent payments were less than represented in the rent rolls; and acted as dual agents in the transaction.  (PSUF 9–11; DAMF 69, 71.)   The Yoons attached the transmitted rent rolls to their amended complaints.  (*See* DAMF 77; DSUF 18.)

---

[3] The Guarantee Exclusion excludes coverage for claims involving "the guaranteeing or warranting of potential sales, earnings, profitability, or economic value."  (DAMF 65.)

[4] The Future Value Exclusion excludes coverage for claims involving "representations or warranties, expressed, implied or otherwise made by the Insureds, pertaining to the guarantee of future value of real property."  (DAMF 66.)

[5] The Dual Agency Exclusion excludes coverage for claims involving "the Insured's activity as a dual agent in real estate transactions where the Insured failed to fully disclose its dual agency status in writing to all clients and where the clients did not consent to the dual agency in writing."  (DAMF 67.)

On the Yoons' claims for fraud, the Superior Court sustained Kim and LA 1's demurrer. (PSUF 12.) After a trial, Kim and LA 1 prevailed on the remaining causes of action. (PSUF 14.) The court held in a Statement of Decision that Kim and LA 1 did not owe a duty to the Yoons to verify the accuracy of the papers Choi supplied. (PSUF 15; Pls. Statement Genuine Issues ("PSGI") & Additional Material Facts ("PAMF") 1, ECF No. 38-1.)[6] The court also found that the Yoons and Choi acknowledged and consented to Kim's dual agency in writing, although the disclosure form was not in trial evidence. (DSUF 41.) The Yoons appealed, and the appeal remains pending. (Decl. David S. Kim ¶ 3, ECF No. 29-1.)

**B.    Tender of the Yoon Action**

When they received the initial complaint in June 2015, Kim and LA 1 tendered the Yoon Action to Scottsdale[7] for a legal defense. (DSUF 23.) On July 30, 2015, Scottsdale Insurance Senior Claims Specialist, Mark Giacopelli, denied the defense. (PSUF 32–34.) In his denial letter, Giacopelli quoted the Yoons' allegations, that Kim and LA 1 concealed or failed to disclose material information regarding past rents, and knew or should have known that Choi manipulated the rent rolls. (PSUF 32–33.) Giacopelli then concluded that the Yoons' claims were "based entirely upon representations made regarding rental payments by tenants of the property," and therefore "completely excluded under [the Real Estate Endorsement] of the Policy." (PSUF 34.) Giacopelli quoted the Guarantee Exclusion and reserved all rights. (DSUF 25; Decl. Michael Zartman ("Zartman Decl.") Ex. E ("First Coverage Denial"), ECF No. 33-10.)

Kim and LA 1 tendered the Yoon Action to Scottsdale several more times over the course of the action and requested that Scottsdale reconsider its denial. (PSUF 36;

---

[6] Plaintiffs restart numbering of their additional facts at "1," despite the Court's directive to continue the sequence of Defendants' DSUF. (*See* Scheduling & Case Mgmt. Order ("Scheduling Order") 7, ECF No. 15.) For clarity, the Court cites Plaintiffs' additional facts as "PAMF" and Plaintiffs' statements of genuine issues as "PSGI."

[7] The parties do not specify to which Scottsdale entity Plaintiffs tendered the Yoon Action, nor is there any suggestion that the distinction is material here. (*See* DSUF 23.)

DSUF 26, 34, 36.)  Scottsdale denied the defense each time.  (PSUF 36; DSUF 29, 35, 37.)

**C.    This Action**

Plaintiffs Kim and LA 1 now bring this suit against Defendants Scottsdale Insurance, Scottsdale Indemnity, and Scottsdale's parent company, Nationwide.[8] Plaintiffs assert two causes of action, for breach of contract and breach of the implied covenant of good faith and fair dealing (also referred to as "bad faith").  Plaintiffs and Defendants move for summary judgment.

## III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.*; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a "non-moving party must show that there are 'genuine factual issues that . . . may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S.

---

[8] On January 27, 2021, Plaintiffs sued Scottsdale Insurance and Nationwide based on the 2014 Policy.  (Notice of Removal ("NOR") Ex. A ("Compl."), ECF No. 1.)  On November 10, 2021, Plaintiffs sued Scottsdale Indemnity and Nationwide based on the 2015 Policy.  *See* NOR, *Kim v. Scottsdale Indem. Co.*, No. 21-cv-9642-ODW (JPRx), ECF No. 1 (C.D. Cal. filed Dec. 13, 2021).  On January 24, 2022, pursuant to the parties' stipulation, the Court consolidated the actions.  (*See* Order Stip. Consol., ECF No. 27.)

at 250 (emphasis omitted)).  Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).  Thus, when parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).  The court considers "each party's evidence, regardless under which motion the evidence is offered."  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).  The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes, *and* (b) controverted by declaration or competent written evidence.  C.D. Cal. L.R. 56-3.

## IV.   EVIDENTIARY MATTERS

Plaintiffs request that the Court take judicial notice of certain pleadings and rulings from the Yoon Action.  (Pls. Req. Judicial Notice ("PRJN"), ECF No. 31.) The Court **GRANTS** Plaintiffs' request, as the Court "may take notice of proceedings [and related filings] in other courts . . . if those proceedings have a direct relation to matters at issue," as they do here.  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); Fed. R. Evid. 201(b).

Plaintiffs and Defendants object to specific items of evidence.  The Court has reviewed and evaluated the objections and finds it "unnecessary and impractical . . . to methodically scrutinize each objection and give a full analysis of each argument raised."  *See Doe v. Starbucks, Inc.*, No. SACV 08-0582-AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Accordingly, where the objected evidence is unnecessary to the resolution of the summary judgment motions or supports facts

1  not in dispute, the Court need not resolve those objections here.  To the extent the

2  Court relies on objected evidence, those objections are **OVERRULED**.  *See Burch v.*

3  *Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding

4  with only necessary rulings on evidentiary objections).  Finally, the Court disregards

5  all improper argument in statements of fact or statements of dispute.  (*See* Scheduling

6  Order 7–9.)

7  **V.    DISCUSSION**

8         Plaintiffs seek partial summary judgment on their first cause of action for

9  breach of contract and on Defendants' affirmative defenses based on coverage

10  exclusions.  (Pls. Notice Mot. 2, ECF No. 29; *see* Answer 8–10 (Third, Fifth, Sixth, &

11  Seventh Affirmative Defenses), ECF No. 8.)  Defendants seek summary judgment or

12  partial summary judgment on Plaintiffs' causes of action for breach of contract and

13  bad faith, and also Plaintiffs' claims for fees pursuant to *Brandt v. Superior Court*,

14  37 Cal. 3d 813 (1985) ("*Brandt* fees") and punitive damages.  (DMSJ 7–8.)  As both

15  sides seek judgment on the breach of contract cause of action, the Court begins there.

16  **A.    Breach of Contract**

17         Plaintiffs argue Defendants breached the insurance contract by denying

18  Plaintiffs a defense in the Yoon Action, and that Plaintiffs are thus entitled to judgment

19  as a matter of law on Plaintiffs' first cause of action and Defendants' exclusion-based

20  affirmative defenses.  (PMSJ 9–23.)  Defendants contend they did not breach the

21  insurance contract by denying coverage because the three exclusions apply, and thus

22  Defendants are entitled to judgment as a matter of law on Plaintiffs' first cause of

23  action.  (DMSJ 13–17.)  Defendants also argue Scottsdale Insurance and Nationwide

24  cannot be liable on Plaintiffs' claims.  (DMSJ 17, 19.)

25         "[I]nterpretation of an insurance policy is a question of law."  *Golden Eagle Ins.*

26  *Corp. v. Cen-Fed, Ltd*, 148 Cal. App. 4th 976, 984 (2007).[9]  Courts look to the

27

28  [9] As the Court's jurisdiction is based on diversity of citizenship, California substantive law applies.  *See Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 39 F.4th 1113, 1118 (9th Cir. 2022).

7

language of the contract "to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.*  Where an insurance contract supplies a duty of defense, a liability insurer must defend its insured "against claims that create a potential for indemnity" under the policy. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (emphasis omitted) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 279 (1966)).  The insurer breaches its duty under the policy by refusing to defend where there is a "possibility that the claim may be covered." *Id.*; *Gray*, 65 Cal. 2d at 279.  The "insurer's duty to defend does not extend to claims for which there is no potential for liability coverage"; this includes claims which fall outside the scope of the policy or are expressly excluded. *See Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal. App. 4th 1390, 1401 (2015) (emphasis omitted).

On summary judgment, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish the *absence of any such potential*." *United Enters., Inc. v. Superior Ct.*, 183 Cal. App. 4th 1004, 1011 (2010).  In other words, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose*, 6 Cal. 4th at 300.  Any doubts concerning the potential for coverage and duty to defend are resolved in favor of the insured. *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015); *see Gray*, 65 Cal. 2d at 269 n.3 ("It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer." (quoting *Cont'l Cas. Co. v. Phx. Constr. Co.*, 46 Cal. 2d 423, 437–38 (1956))).

### 1.   Potential for Coverage

To determine whether a duty to defend exists, i.e., whether the claim is potentially covered, courts compare the allegations of the underlying complaint with the terms of the policy. *Montrose*, 6 Cal. 4th at 295.  Courts may also consider facts extrinsic to the complaint to establish or preclude the duty to defend. *Id.*; *Albert*, 236 Cal. App. at 1290.  The insurer's duty to defend may not be excused "where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could

fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (citing *Gray*, 65 Cal. 2d at 275–76).

Here, the Policies cover claims against Plaintiffs for alleged wrongful acts committed in the course of providing professional real estate services. A "Wrongful Act" means "any actual or alleged error, omission, misleading statement, misstatement, neglect, . . . breach of duty or act allegedly committed . . . by the Insureds." (*See* 2015 Policy SIC000336.[10]) This is precisely what the Yoons alleged, that Plaintiffs omitted information, made misleading statements or misstatements, and breached their professional duties by failing to verify the accuracy of Choi's rent rolls. (*See* PRJN Ex. 1 ("Yoon Compl.") ¶¶ 35–72, ECF No. 32; *id.* Ex. 2 ("Yoon SAC") ¶¶ 12–16, 33–88; *id.* Ex. 4 ("Yoon Decision") SIC000047–49.) Defendants do not dispute that the Yoon Action alleged Plaintiffs committed a "Wrongful Act" or acts within the meaning of the Policies. (*See* DSGI 37.) Accordingly, Plaintiffs have established that the Yoon Action raised a potential for coverage under the Policies.

### 2.    Exclusions

"[O]nce the insured has established potential liability . . . the insurer must assume its duty to defend unless and until it can conclusively refute that potential." *Montrose*, 6 Cal. 4th at 299. "[W]hen an insurer seeks summary judgment on the ground the claim is excluded, the burden is on the insurer to prove that the claim falls within an exclusion." *Albert*, 236 Cal. App. 4th at 1290. Exclusionary clauses in insurance contracts "must be conspicuous, plain and clear." *Gray*, 65 Cal. 2d at 271. They are strictly construed and interpreted narrowly against the insurer. *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 985 (2008); *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*, 78 Cal. App. 4th 847, 873 (2000).

Defendants contend that three exclusions in the Real Estate Endorsement exclude any coverage of the Yoon Action: the Guarantee Exclusion, the Future Value Exclusion, and the Dual Agency Exclusion. (DMSJ 13–17; Defs. Opp'n 10–15.)

---

[10] The Court cites the bates-labeled pagination for clarity.

1          a.          Guarantee Exclusion

2          The Guarantee Exclusion excludes claims "alleging, based upon, arising out of,

3   attributable to, directly or indirectly resulting from, in consequence of, or in any way

4   involving the guaranteeing or warranting of potential sales, earnings, profitability, or

5   economic value." (2015 Policy SIC000344–45.)

6          Nothing in the Yoon Action involves Plaintiffs' "guaranteeing or warranting"

7   profitability.  (*See id.*)  The Yoons alleged that Plaintiffs knew or should have known

8   that tenants' rent payments were less than the amount Choi represented, and that

9   Plaintiffs were professionally negligent in transmitting the rent rolls without auditing

10  Choi's information.  (PSUF 11, 15; *see* Yoon Compl. ¶¶ 35–72; Yoon SAC ¶¶ 33–51;

11  *see also* Yoon Decision SIC000049.)   The Yoons did not allege that Plaintiffs

12  guaranteed or warranted potential earnings or economic value, and Plaintiffs'

13  transmitting Choi's rent rolls cannot reasonably be construed as doing so.   Further,

14  Plaintiffs included a disclaimer with the rent rolls specifically rejecting any such

15  guarantee, and the Yoons attached those documents to their amended complaint.

16  (PSUF 7; Yoon SAC Ex. 2.)

17         Defendants denied coverage based on the Guarantee Exclusion because Senior

18  Claims Specialist Giacopelli summarized the Yoons' claims as "based entirely upon

19  representations made regarding rental payments by tenants of the property."   (First

20  Coverage Denial SIC000322.)   But this broad statement omits the essential terms of

21  the exclusion, specifically the requirement that the Yoons attribute some *guarantee* of

22  profitability to Plaintiffs.  Despite Defendants' repeated and unsuccessful attempts to

23  equate a mere "representation" with a "guarantee," (*see* Defs. Opp'n 11 ("[T]he

24  exclusions apply when the claimant merely alleges a representation concerning the

25  value of the property . . . .")), Defendants point to nothing in the Yoon Action that

26  attributes any guarantee of economic value to Plaintiffs, (*see* DMSJ 15; Defs.

27  Opp'n 10–13).

28

1   The Guarantee Exclusion does not apply.[11]

2        b.    Future Value Exclusion

3       The Future Value Exclusion excludes claims involving "representations or

4   warranties, expressed, implied or otherwise made by the Insureds, pertaining to the

5   guarantee of future value of real property." (2015 Policy SIC000344.)

6       The same reasoning that defeats Defendants' argument for the application of the

7   Guarantee Exclusion defeats application of the Future Value Exclusion. The Yoons

8   did not attribute any guarantee of future value to Plaintiffs in the Yoon Action.[12] To

9   the extent Defendants mean to suggest that Plaintiffs' transmittal of rent rolls and

10   other escrow information to the Yoons somehow "implied" a "representation . . .

11   pertaining to the guarantee of the future value of" the property, the Court finds the

12   exclusion language vague, attenuated, and ambiguous regarding the definition of a

13   "representation[] . . . pertaining to [a] guarantee." To this extent, the Court construes

14   the language strictly and narrowly against Defendants. *See Shade Foods*, 78 Cal. App.

15   4th at 873. In this light, the Court reaffirms the above conclusion that the Yoons did

16   not attribute any guarantee of future value to Plaintiffs.

17       The Future Value Exclusion does not apply.

18        c.    Dual Agency Exclusion

19       The Dual Agency Exclusion excludes claims involving "the Insured's activity

20   as a dual agent in real estate transactions where the Insured failed to fully disclose its

21   dual agency status in writing to all clients and where the clients did not consent to the

22   dual agency in writing." (2015 Policy SIC000345.)

23

24   [11] The Court finds the Guarantee Exclusion does not apply based on its plain language and thus does

25   not reach the parties' arguments on ambiguity. Equally, the Court finds Defendants' proffered
Escrow Amendment, Tenant Estoppel Certificates, and Appraisal report immaterial to this issue.

26   [12] Defendants argue, "[t]he Yoons allege that Plaintiffs expressly represented the rents generated by

27   the subject property *to show the Yoons what the future value of the subject property could be*."
(Defs. Opp'n 13 (emphasis added).) The Court's review of the Yoon pleadings reveals no such

28   representation. Nor is this the first instance the Court has encountered Defendants' overreaching.
The Court sternly reminds counsel of their duty of candor. *See* Cal. Rules of Prof'l Conduct 3.3.

The Superior Court found that "Kim acted in the capacity of a dual agent with respect to this transaction," and although "there was none in evidence, she had the parties sign a dual agent disclosure form, where they acknowledge being informed of the dual agency and the rights and obligations inherent thereto."  (DSUF 41; Yoon Decision SIC000047.)  Thus, Kim disclosed the dual agency status in writing and Kim's clients consented to the dual agency status in writing.  This defeats application of the Dual Agency Exception.

Defendants rely on the court's statement, "there was none in evidence," to argue that Plaintiffs failed to disclose their dual agency status or obtain consent in writing. They insist that this statement, coupled with Plaintiffs' failure to produce written evidence of disclosure and consent here, establishes that the Dual Agency Exclusion applies.  (*See* Defs. Opp'n 15.)  This argument borders on frivolous.  In the same sentence upon which Defendants so heavily invest, the court clearly found written disclosure and consent.  (*See* Yoon Decision SIC000047.)  Defendants' semantic gymnastics warrant no further address.

The Dual Agency Exclusion does not apply.[13]

### 3. *Scottsdale Insurance & Nationwide*

Defendants also argue that Scottsdale Insurance and Nationwide are not liable on Plaintiffs' claims and are therefore entitled to summary judgment.  (DMSJ 17, 19.)

#### a. Scottsdale Insurance

Defendants contend Scottsdale Insurance is entitled to summary judgment on Plaintiffs' breach of contract cause of action because the Yoon Action claim for coverage was not "first made" during the 2014 Policy coverage period.  (DMSJ 17.)

Scottsdale Insurance issued the 2014 Policy providing coverage for the Policy Period from May 20, 2014, to May 20, 2015.  (2014 Policy SIC000559; DSUF 1.)

---

[13] Plaintiffs argue Defendants waived and are estopped from invoking the Future Value and Dual Agency Exclusions in this action because Defendants failed to expressly raise them in the First Denial Letter.  (PMSJ 21.)  The Court does not reach this argument because it finds the two exclusions do not apply.

1   Defendants point to the 2014 Policy's insuring clause, which requires that an insured's
2   claim be "first made" during the Policy Period.  (DMSJ 17; 2014 Policy SIC000571.)
3   It is undisputed that the Yoons filed the Yoon Action on June 23, 2015, outside the
4   2014 Policy Period.   (DSUF 8–9; PSUF 8.)   Plaintiffs do not address Defendants'
5   "first made" argument in their opposition or otherwise raise a genuine issue for trial.
6   (*See* Defs. Reply 7; *see generally* Pls. Opp'n; PMSJ.)  As such, Plaintiffs concede the
7   issue.   *See, e.g.*, *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir.
8   2005) (finding the plaintiff abandoned claims by not addressing them in opposition to
9   motion for summary judgment).   Accordingly, Scottsdale Insurance is entitled to
10   summary judgment on Plaintiffs' breach of contract cause of action.  *See* Fed. R. Civ.
11   P. 56(e)(3).

12                  b.   <u>Nationwide</u>

13        Defendants next argue that Scottsdale's parent company, Nationwide, cannot be
14   liable on any of Plaintiffs' causes of action because Nationwide is not a party to the
15   Policies, and a parent company is generally not liable for its subsidiaries' acts.
16   (DMSJ 19.)

17        Plaintiffs present evidence that Nationwide was a party to the Policies, involved
18   in the handling of Plaintiffs' claim, and authorized the denial of Plaintiffs' claim for
19   coverage.   (Pls. Opp'n 13–14.)   Senior Claims Specialist Giacopelli testified that
20   "Nationwide was a party to the insurance contract . . . and Nationwide issued a
21   coverage-opinion letter based on the evidence . . . [and] information that it received."
22   (PAMF 23; Shuman Decl. ISO Pls. Opp'n ("Shuman Decl. Opp'n") ¶ 4, Ex. 2
23   ("Giacopelli Dep.") 272:2–6, ECF Nos. 38-2, 38-4.)   Nationwide handled claims for
24   Scottsdale's policies, and some of the coverage denial letters on Plaintiffs' claims were
25   issued on Nationwide letterhead.  (*See* PAMF 26–27; Giacopelli Dep. 271:10–19.)
26   Additionally, Giacopelli's coverage denial was reviewed and approved by the
27   Technical Resource Center, a division of Nationwide.   (*See* PSUF 24; Giacopelli

28

Dep. 285:18–286:6.)   This evidence is sufficient to raise a triable issue of fact regarding Nationwide's liability on Plaintiffs' claims.

Defendants contend that Giacopelli "corrected" his deposition testimony.  (*See* Decl. Valerie D. Rojas ISO Defs. Reply Ex. CC ("Correction Sheet"), ECF No. 40-6.) Giacopelli purports to change "Nationwide" to "Scottsdale," so the testimony quoted above would read "*Scottsdale* was a party to the insurance contract . . . and *Scottsdale* issued a coverage-opinion letter based on the evidence."  (*Id.* (emphasis added).) Plaintiffs object to Giacopelli's corrections as untimely and improper.  (Pls. Obj. 2, ECF No. 41-3.)   Although Defendants contend that Giacopelli merely "misspoke" during his deposition and that his corrected testimony is consistent with the Policies and should be considered, (*see* Defs. Resp. Pls. Obj. 2, ECF No. 43), the Court is inclined to agree with Plaintiffs in light of the timing and content of the corrections. Regardless, even were the Court to accept Giacopelli's Correction Sheet, Plaintiffs put forward other evidence, discussed above, that is sufficient to raise a triable issue regarding Nationwide's relationship to the Policies and coverage denial.  Defendants are not entitled to summary judgment as to Nationwide's liability.

4.    *Summary—Breach of Contract*

Plaintiffs establish that the Yoon Action raised a potential for coverage, and Defendants fail to prove it cannot come within the Policies.  *See Montrose*, 6 Cal. 4th at 300.  Defendants also fail to "prove that the claim falls within an exclusion," or raise a genuine dispute of fact suggesting as much.  *See Albert*, 236 Cal. App. 4th at 1290.  Scottsdale Indemnity owed Plaintiffs a duty to defend under the Policies and breached that duty by declining to defend Plaintiffs, causing Plaintiffs to incur damages.  (*See* PSUF 64.)   Therefore, as against Scottsdale Indemnity, no genuine dispute of material fact exists and Plaintiffs are entitled to judgment as a matter of law on the breach of contract cause of action and the exclusion-based affirmative defenses. However, Scottsdale Insurance is entitled to summary judgment on the breach of contract cause of action, and a triable issue remains regarding Nationwide's liability.

**B.    Breach of Implied Covenant of Good Faith & Fair Dealing**

"In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing."  *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979) (citations omitted).  "The implied covenant of good faith and fair dealing is breached when an insurer delays or denies payment of policy benefits unreasonably or without proper cause."  *Harbison v. Am. Motorists Ins. Co.*, 636 F. Supp. 2d 1030, 1039 (E.D. Cal. 2009) (citing *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007)).

An insurer may have proper cause for withholding benefits when there is a genuine dispute "as to the existence of coverage liability or the amount of the insured's coverage claim."  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001), *as modified on denial of reh'g* (July 30, 2001).  "However, 'the genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim.'"  *Harbison*, 636 F. Supp. 2d at 1039 (internal alteration omitted) (quoting *Wilson v. 21st Century Ins.*, 42 Cal. 4th 713, 723 (2007)).  The adequacy of a claim investigation is a critical factor in determining good faith.  *Shade Foods*, 78 Cal. App. 4th at 880.

"The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable."  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  The reasonableness of an insurer's claims investigation is ordinarily a question of fact.  *Chateau*, 90 Cal. App. 4th at 346.  "[A]n insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably."  *Amadeo*, 290 F.3d at 1162.

Defendants argue they are entitled to summary judgment on Plaintiffs' second cause of action for bad faith because (1) coverage was excluded under the Policies or, in the alternative, (2) a genuine dispute existed regarding whether the Policies covered

the Yoon Action. (DMSJ 18.) Defendants' first argument fails because, as discussed above, coverage was not excluded under the Policies. Defendants' alternative argument also fails because Defendants do not establish the existence of a genuine dispute. Defendants do not even clearly articulate what they contend the "genuine dispute" in this case is. (*See* DMSJ 18.) Defendants' failure to develop or support this argument with analysis, evidence, or legal authority justifies denying their motion on this claim. *See Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) ("We decline to address this undeveloped argument, which is not supported by citations to the record, argument, or any legal authority.").

Nevertheless, Plaintiffs put forward facts and evidence sufficient to raise a triable issue about whether Defendants' coverage investigation was adequate and reasonable. (*See* Pls. Opp'n 15–19.) It is undisputed that Defendants' claims handlers never spoke with Kim, and possibly spoke with her representative only twice—once in introduction and once to deny the claim. (PAMF 31; *see* Giacopelli Dep. 32–33, 35–36.) Claims handler Dianna Todino testified at deposition that, before she denied coverage, she took no investigative steps at all besides reading the complaint, the Policies, and a prior coverage opinion. (PAMF 30, 32–33; Shuman Decl. Opp'n Ex. 5 ("Todino Dep.") 155:7–156:17, ECF No. 38-4.) Todino believed any further investigation was unnecessary. (Todino Dep. 155:12–13, 156:3–17.) After Plaintiffs renewed their request for coverage based on the Yoons' amended pleadings with the rent rolls as exhibits, Todino still did not look beyond the allegations or consider the new evidence. (*Id.* at 69:12–71:5.) A trier of fact could view the above as an unreasonable failure to investigate, amounting to unfair dealing. *See Shade Foods*, 78 Cal. App. 4th at 880 ("An unreasonable failure to investigate amount[s] to [such] unfair dealing . . . when an insurer fails to consider, or seek to discover, evidence relevant to the issues of liability and damages.").

Additionally, when asked at deposition, Todino testified that the LA 1 disclaimer—"information deemed reliable but not guaranteed"—was "contradictory,"

making it a "guarantee" that would trigger the Guarantee Exclusion. (PAMF 39 (undisputed); Todino Dep. 72:2–13.) A trier of fact could view this as an unreasonable interpretation of evidence and, coupled with Todino's refusal to investigate or reconsider the prior denial, sufficient to fortify a finding of bad faith. *See Shade Foods*, 78 Cal. App. 4th at 880 ("[T]he insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith.").

Defendants dispute the import of Todino's testimony, (*see* Defs. Resp. PAMF 30–33, 39, ECF No. 40-1), but Defendants' challenge only highlights the existence of the triable issues regarding the reasonableness and adequacy of Defendants' claim investigation. Viewing the above facts and evidence in a light most favorable to Plaintiffs, a reasonable jury could conclude that Defendants' claims investigation was unreasonable or inadequate.

Defendants fail to establish that they are entitled to judgment as a matter of law with respect to Plaintiffs' cause of action for bad faith, and Plaintiffs raise triable issues of material fact precluding such summary judgment in any event. Summary judgment is therefore not appropriate on Plaintiffs' cause of action for bad faith.

## C.    Damages

Defendants also move for summary judgment on Plaintiffs' claims for *Brandt* fees and punitive damages on the grounds that Plaintiffs cannot produce evidence to support them. (DMSJ 20–24.)

### 1.    Brandt Fees

"When an insurer tortiously withholds benefits . . . attorney's fees [that are] reasonably incurred to compel payment of the policy benefits [are] recoverable as an element of the damages . . . ." *Brandt*, 37 Cal. 3d at 815. Since the fees are considered damages, "the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise." *Id.* at 819. The normal preference

is for the parties to stipulate to the trial court's post-judgment allocation of *Brandt* fees. *Id.*

Defendants assert that Plaintiffs failed during discovery to produce evidence for *Brandt* fees and to identify the amount they claim, and therefore Plaintiffs' *Brandt* fee claim should be barred. (DMSJ 20–22.) Plaintiffs contend they have now produced evidence to support *Brandt* fees and, had Defendants met and conferred in good faith as required by Local Rule 7-3, Plaintiffs would have disclosed this evidence prior to the close of discovery. (Pls. Opp'n 20–21.)

Local Rule 7-3 requires counsel or parties contemplating motion practice to "first contact opposing counsel to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. Compliance with the district court's Local Rules is not optional. *See Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-01409 AG (KESx), 2016 WL 6088257, at *2 (C.D. Cal. Oct. 17, 2016) ("Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers. . . . Local Rule 7-3 instead helps ensure counsel fulfill their obligation 'to secure the just, speedy, and inexpensive determination of every action and proceeding,' by avoiding unnecessary litigation."). "The Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 . . . ." C.D. Cal. L.R. 7-4.

Defendants met and conferred with Plaintiffs sufficiently in advance of filing Defendants' motion for summary judgment. (Decl. Valerie D. Rojas ISO DMSJ ("Rojas Decl.") ¶ 7, ECF No. 33-3.) This meeting occurred twelve days before the close of discovery. (Decl. Steven J. Lipscomb ISO Pls. Opp'n ("Lipscomb Decl.") ¶ 9, ECF No. 38-3.) Yet, in that conference, Defendants did not "discuss thoroughly . . . the substance of the contemplated motion." *See* C.D. Cal. L.R. 7-3. Defendants notified Plaintiffs that they intended to move for summary judgment on

"all of Plaintiffs' claims," (*see* Defs. Reply 12[14]), but did not discuss Defendants' intent to move on *Brandt* fees, and in particular the basis for such a motion: that Plaintiffs had not disclosed supporting evidence during discovery, (Lipscomb Decl. ¶ 9; Shuman Decl. Opp'n ¶ 2; *cf.* Rojas Decl. ¶ 7). Defendants' hide-the-ball meet-and-confer does not satisfy the letter or the spirit of Rule 7-3. As Defendants are undoubtedly aware, had they complied with Local Rule 7-3 in good faith and discussed thoroughly their true intent, Plaintiffs would have immediately disclosed their *Brandt* fee evidence, within the discovery period. (Lipscomb Decl. ¶ 9.)

Defendants' failure to comply with Local Rule 7-3 warrants denial of Defendants' motion on this issue. *See* C.D. Cal. L.R. 7-4. Plaintiffs disclosed from the outset of this action that they would seek *Brandt* fees; Plaintiffs have maintained detailed time records and segregated unrelated time; and Plaintiffs assert they will continue to update the amount at issue as *Brandt* fees accrue through trial. (Pls. Opp'n 20–21; Lipscomb Decl. ¶¶ 2–7.) Thus, Plaintiffs demonstrate they possess evidence to support *Brandt* fees and have disclosed those records to Defendants. In the event that Defendants insist on litigating *Brandt* fees at trial, the Court will permit limited additional discovery on the issue.

### 2. *Punitive Damages*

A plaintiff may recover punitive damages in a tort action if there is "clear and convincing evidence" that the defendant is "guilty of oppression, fraud, or malice." *Shade Foods*, 78 Cal. App.4th at 890–91 (citing Cal. Civ. Code 3294(a)). In insurance cases, punitive damages can be most plausibly justified by a finding of oppression or malice. *Id.* at 891. "Oppression" is defined to mean "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* "Malice" is defined to mean "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.*

---

[14] Defendants' Reply exceeds this Court's page limitation. (*See* Order re Scheduling Conference 5, ECF No. 9.) The Court therefore disregards Defendants' Reply beyond page twelve.

"With respect to a corporate employer," an "officer, director, or managing agent of the corporation" must authorize or ratify the oppression or malice.  Cal. Civ. Code. § 3294(b).

"[A] finding of bad faith and punitive damages depends on inferences drawn from the same evidence," but a "marginally sufficient case of bad faith is not likely to prove malice or oppression by clear and convincing evidence." *Harbison*, 636 F. Supp. 2d at 1044 (quoting *Shade Foods*, 78 Cal. App. 4th at 909–10).  Even so, evidence which supports that an insurer's denial of a claim went beyond poor judgment, was based on a plainly unreasonable interpretation of the policy, or deliberately restricted the claims investigation, may raise a triable issue about the propriety of punitive damages.  *See Amadeo*, 290 F.3d at 1165 (finding such evidence sufficient to send the question of punitive damages to the jury).

Defendants argue that Plaintiffs have no evidence of oppression, fraud, or malice; corporate ratification; or Defendants' financial condition.  (DMSJ 22–24.) Looking to the same evidence discussed above, and viewing the facts in a light most favorable to Plaintiffs, a reasonable jury could conclude that Defendants' claims agents refused to look beyond their own unreasonable interpretation of the allegations and policy exclusions, and that this refusal was with the purpose to deny policy benefits.  (*See, e.g.*, Todino Dep. 72:2–13, 155:7–156:17 (testifying that no investigation was necessary, and the disclaimer that the rent rolls were "deemed reliable but not guaranteed" meant Plaintiffs guaranteed the rent values, which would trigger the Guarantee Exclusion).)

Further, the California Supreme Court has recognized that when insurance claims handlers "dispose of insureds' claims with little if any supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation."  *Egan*, 24 Cal. 3d at 823 ("Manifestly, to plaintiff, the claims representative's actions were actions of defendant." (alteration removed)).

Thus, the actions of Giacopelli and Todino may be considered actions of managing agents for the purposes of punitive damages.

Finally, Plaintiffs submit evidence of Defendants' financial condition in the form of Scottsdale Indemnity's Annual Statement, filed with the California Department of Insurance.  (Shuman Decl. Opp'n ¶ 12, Ex. 10, ECF No. 38-4; Suppl. Decl. Steven C. Shuman Ex. 11, ECF No. 41-1.)  Defendants object to this evidence on multiple grounds, including that it was not disclosed during discovery.  (Defs. Obj., ECF No. 44.)  The Annual Statement is a certified public record, readily available in the public sphere.  Defendants' objection is **OVERRULED**.

Triable issues of material fact preclude summary judgment on Defendants' motion as to the issue of punitive damages.

## VI.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' and Defendants' Motions for Summary Judgment. (ECF Nos. 29, 33.)   Specifically, Plaintiffs' Motion is **GRANTED IN PART** on Plaintiffs' breach of contract cause of action and Defendants' affirmative defenses three, five, six, and seven, only as against Scottsdale Indemnity.  Plaintiffs' Motion is **DENIED IN PART** as against Scottsdale Insurance and Nationwide.  (ECF No. 29.) Defendants' Motion is **GRANTED IN PART** on Plaintiffs' breach of contract cause of action only as to Scottsdale Insurance.  Defendants' Motion is **DENIED IN PART** as to all other causes of action and claims.  (ECF No. 33.)

**IT IS SO ORDERED.**

September 16, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**